The United States Court of Appeals for the Ninth Circuit is now in session. Good morning and welcome to the Nakamura Courthouse here in Seattle, Washington. It's a pleasure to be here. It's such a lovely day, especially. This is the time set for the case of Gopher Media v. Andrew Melone or Maloney. Somebody will tell me if I'm pronouncing that correctly. So if the counsel is ready to proceed, you can come forward. And in the meantime, I'll just check in with Judge Bumate to see if he can hear us. And I want to make sure we can hear him. Good morning, Judge Bumate. Yes, Chief. Good morning. I can hear you well. Thanks, Chief. Thank you. Good morning, Your Honors. Chase Kovner for the appellants. I'd like to reserve five minutes for rebuttal, if that's okay. We'll do the best, but you need to watch the clock. And then can you speak up? I'm for some reason – Is that better, Your Honor? Go ahead. Ms. Chief Judge, may it please the Court. The federal rules answer many questions about the process of litigation. But the federal rules do not answer the question of how to protect speech from the litigation process itself. The State of California has tried to fill that gap with special rules of decision and liability for claims targeting speech. For decades, the federal courts in this circuit have upheld the core aspects of those rules by permitting litigants to file a special motion that will either dismiss the case and provide attorney's fees or provide a direct right of appeal. This body of precedent reflects the balance of federalism that Congress struck and the Supreme Court requires. Counsel, before we get to the merits of the anti-SLAPP work itself, I want to talk to you about BATSL. As you know, in 2003, our court decided BATSL v. Smith, in which we essentially concluded the denial of an anti-SLAPP motion was immediately appealable. Many of our colleagues on the court, and even one of the judges on the original panel, have concluded that the original opinion was wrong because an anti-SLAPP motion does not comply with Mohawk Industries, Cohen, and other Supreme Court guidance. What is your best argument that BATSL is still good law and should not be overruled by our panel, essentially leaving us without jurisdiction? Yes, Your Honor. So I think first, I think BATSL is consistent with this court's other precedents involving similar state rights of immunities from suit. The court has engaged in a similar analysis, for example, in the Adame v. City of Surprise decision. This is a 2022 decision. That was following BATSL. We basically followed our own opinion. But my point is that a lot of our judges, including one that was on the original panel, said, hey, we got it wrong. We just got it wrong. We can go through the sub-details on it. But what I would like is your very best argument that, notwithstanding the Second Circuit's case, which also found there was no jurisdiction in terms of immediate appealability, what's your best argument, besides our own case law, which tracks BATSL, that it's good law, that you ought to be able to immediately appeal as opposed to following the other collateral order cases from the Supreme Court? Yes, Your Honor. And just to be clear, the Adame case doesn't follow BATSL. It's in another context. But just to directly answer your question, Your Honor, I think I would go right to the separability analysis. That seems to be where a lot of these other circuits are getting hung up. They're going right to that analysis, and they're saying, look, this is not an analysis that's separate from the merits. And I think that that's incorrect, Your Honor. And the reason for that is those courts are relying on the Johnson decision out of the U.S. Supreme Court, and there are other decisions in the U.S. Supreme Court that limit Johnson significantly, in particular the Barron's case by Justice Scalia and the Plumhoff decision more recently by Justice Alito. Those cases make clear that the type of analysis that this Court engages in on an anti-SLAPP motion is at least distinct enough from the merits to merit direct appeal. And that's because the issue of the 12B6 standard, how is it severable from the merits? What's different from the merits? It is the merits, the 12B6. It wasn't, Your Honor. For example, in Ashcroft v. Iqbal, where the Supreme Court said that sufficiency of the pleadings, determining whether the pled facts support a violation of law, that is separate from the merits under the United States Supreme Court decision in Iqbal. The Johnson decision— Qualified immunity has an extra layer. Here there's nothing. It's just a 12B6 with then state remedies slapped onto whoever wins the 12B6. So the Iqbal decision did address the sufficiency of the pleadings issue. I understand it was in the context of qualified immunity, but it said very clearly that if the issue is simply evaluating the sufficiency of a complaint, that's not a fact-based question of law that is permitted under the collateral order doctrine. And I think typically this Court is dealing with a legal issue. It may touch on the facts, like in the First Amendment context, it does involve consideration of the statements, for example, and the context of the statements. But that's really no different than what this Court's doing in the qualified immunity context, where it's getting into whether or not the Fourth Amendment has been violated. Qualified immunity is different because it's a right not to have to go to trial. It's almost more constitutional than really dealing with the merits, because if you're denied qualified immunity, then you have to go through all the trial, and you can raise it again, but it doesn't— it's like they sort of say in the parlance, you can beat the rat but not the ride. And qualified immunity, if you're denied, you have to go through the trial. Here, it really is dealing with the merits. Well, I think we have to look at how the Court has defined immunity and the right not to be tried, and I think the Barron's decision, in particular, Justice Scalia defined immunity from suit as a right not merely to avoid standing trial, but also to avoid the burdens of such pretrial matters that would make it difficult for the defendant. Could you tell me the practical consequences? If we—hypothetically, if we held that the denial of a special motion to strike under California's anti-SLAPP statute was not immediately appealable, what would be the practical consequences of that? If a motion to dismiss is denied and is not appealable, could the movement nonetheless be awarded attorney's fees if the court or the jury ultimately decided in the defendant's favor and determined that the plaintiff's case had always been frivolous? What are the practical consequences? Well, I think if the Court were to find that the anti-SLAPP law still applies in federal court, then yes, there would be a right to attorney's fees. That still remains, if that's what you're getting at, Your Honor. But the right that the statute is intended to confer, and I think expressly confers, would be lost because the right is a right to avoid trial, a trial on the constitutional right to speak, to petition. There is no existing federal law that protects that right from litigation itself. That's what the anti-SLAPP law does. Counsel, hasn't the California Supreme Court specifically said that the statute provides no immunity from anything to anyone? No, Your Honor. It has not said that in the context of the collateral order doctrine. No, no, I understand. But in terms of substance, hasn't it said that this statute does not provide anyone immunity from anything? No, Your Honor. I would say that I think we have to look at that in the context, Your Honor, of what it's talking about when it says immunity, no immunity. It's talking about the situation where somebody's arguing that just because there's protected activity, you're going to have to dismiss the case, and the court's saying no, protected activity is just the threshold to get into the statute. Once we're in the statute, we look at whether or not it's been sufficiently pled or whether or not we can find in their favor. So I think that that question is not dealing with the question that this court has dealt with and other decisions on immunity in particular for the collateral order doctrine purposes, which is immunity from suit. And I do want to note, just getting back to this Adami decision in 2022, the court certified a question to the Arizona Supreme Court and said, Arizona Supreme Court, tell us whether this is immunity from suit that you're conferring through a statute. And that was dispositive of appellate jurisdiction in that case. But if this comes down to a cost-shifting rule over who wins a 12b-6, why is that a substantive rule that applies in federal court in the first place? It doesn't apply in federal court for every 12b-6, Your Honor, because every 12b-6, Your Honor, is not dealing with the right not to be tried. Right, but in this context, this is a 12b-6 inquiry, and if this were in California court, then there would be a cost-shifting on fees to the winner. Why is that a substantive rule? It's not a cause of action. It's just a rule about who gets costs on a procedural motion. Why is that a substantive rule that applies in federal court? Because it creates a new liability that didn't exist before in federal court. But it's not a cause of action. You couldn't bring a cause of action for this in a separate action. It's just a procedural device that is attached to a procedural device in state court. And why does that carry over when it's not a substantive liability? Your Honor, I don't believe that the fee-shifting mechanism is a procedural device. Under Cohen, the Cohen decision says that fee-shifting in a very similar context is not procedural but is a substantive right, is a new liability that state law provides. You can have rights to get attorney's fees that attach to substantive causes of action, but that's not what this is. It does not attach to a particular cause of action, but it does attach to a class of claims. If you win this claim, could you bring a separate lawsuit that seeks the attorney's fees in this case? I don't know, Your Honor. I don't believe so. No, you couldn't. It's something that just happens within the course. It's ancillary to the procedural device. It's not a cause of action. It's not a substantive liability. Your Honor, I don't see it that way. I think that the procedural device is incidental to the right. The right is to recover fees, really to deter these types of lawsuits, but to at least provide legal expenses for the defendant. So that is a right that is, I mean, under this Court's precedent, under the Supreme Court precedent, attorney's fees shifting statutes are substantive. If California adopts a procedural rule that says whoever wins a summary judgment motion gets expert witness fees costs, does that get applied in federal court? Now it's a substantive right, according to your view. That whoever wins gets expert fees? Right. I believe that would be a substantive liability that's been created by state statute. I believe so, Your Honor. Yeah, but that's a sweeping proposition because you're basically saying that a state through state law could enact all kinds of fee shifting rules not related to a claim but related to the procedure. So we could come up with endless hypotheticals that California could impose fee shifting if you file more than a certain number of interrogatories or a certain volume of document requests, and all of a sudden we're saying you have actually a substantive right not to be burdened with a certain amount of document requests and therefore you get fees. There's a big difference between fees that are attached to a cause of action or a claim and one that's attached to success on some procedural device. I agree, Your Honor. I think that there is a difference there. I don't know that it would attach to every procedural device. For example, if it was dealing with specifically discovery itself, which I think we would agree is procedural, I don't know that it would apply in that context. It would be substantive in that context. But if it's dealing with a state cause of action, a state created cause of action, and the state wants to come along and qualify that cause of action and say in this particular class of claims when it's touching on speech and petitioning activity, we're going to provide fees for the defendant, I think that's a separate matter than discovery. These are the very kinds of things that our colleagues, since the original battle decision, have complained about. Judge McEwen, Judge Desai, Judge McGeehan, Kaczynski joined by Gould, Watford joined by Kaczynski, Piaz and Bea, and Desai again, have specifically focused on the very question that has just been asked. And that's what I'm struggling with. I mean, we want to do our job right, but we're struggling with how this Trophy 6 motion, as Brother Colin just pointed out, ends up having this special treatment when, in fact, you have to mess with the facts to make any determination. And not only that, you could get the remedy at the end of a trial. So it just seems like you've got a state-based procedural posture that's kind of running how we operate our court. And people across the spectrum in our court have the same worry about it, which is why I started with the question, what's your best argument that all these judges are wrong? So, Your Honor, I don't think it's state deciding what the federal courts do, per se. I think the federal courts have already determined that there are certain types of rights that are important enough. Colin, Mohawk, yeah, of course. They've decided that that's important enough. So when the state does enact a right not to be tried, an immunity from suit, that touches on an important interest, in this case, it would be First Amendment rights in connection with the public issue. When the states do that, they're signaling to this court, we think that this is a right that's important enough not to be tried. This court, under the Cohen decision, under the Plumhoff decision, it's not special in the sense of what the court is analyzing when it gets to the second step. But the district court can, of course, certify a question to us if it feels in an individual case that there's an important question, a public question. Without any reference to the anti-SLAPP doctrine, the district court can certify it to us, and if we accept it, we're in a good spot, are we not? Your Honor, the state of California decided that that was not sufficient to protect these rights. The state of California wanted to be more protective of First Amendment rights. In similar context, when this court's analyzed state statutes, in particular the Henry County of Orange, California wanted to be more protective of the jury trial right. Federal law said that you can waive a jury trial right if it's knowing and voluntary. California said, no, you can't waive it unless it's authorized by statute. This court said, we're going to apply the more protective California law. So I've been a little more friendly towards your position than some of the other people that have been admitted, but would you agree there's two issues? First, whether there's something that's substantive, and then the second issue about whether it's immediately appealable. I mean, you could say it's substantive and save some of that, but then say it isn't immediately appealable, that that would fall onto the procedural side of things. I mean, that's, and when you talked about the other circuits, where the other circuits have come down, more circuits are in favor of that it's not appealable, correct? But you said some of those circuits didn't really analyze the first part of the issue, or tell me how you see the circuits have come down and which would be favorable to the position that you're espousing. So, Your Honor, just to be clear, I think more circuits have actually sided with this court on the collateral order doctrine issue. I have it as four circuits following this court's view on the collateral order doctrine, including the second, the first, and the fifth. There is a interest circuit split in the second circuit on this issue. The second and fifth have both said the anti-SLAPP statute doesn't apply at all in federal court. That's their latest word on this. So it's hard to see how they would allow collateral order appeals. So the fifth circuit has said that the Louisiana anti-SLAPP statute applies, but the Texas statute does not. The second circuit has said that the Vermont statute does not apply, but the California statute actually had said that there was collateral order appeal. I do realize there's a later decision that says it's not applicable in federal court. So the circuits are split on the issue, but there are more circuit opinions aligning with this court on the collateral order doctrine issue. But Ernst v. Kerrigan, which is the second circuit case we're talking about, is pretty much on all fours, and they really don't like our view. What's wrong with Ernst? What did they get wrong there? Your Honor, that decision wrongly applies Supreme Court precedent. It relies on Johnson, almost entirely on Johnson, and says that under Johnson this is a fact-based inquiry, therefore we have no appellate jurisdiction. I think that's wrong for two reasons. Number one, Johnson has been significantly limited by Barron's and Plumhoff. In the Barron's decision, Justice Scalia said that it's only an issue that is a sufficiency determination that if it's nothing more than whether the evidence could support a finding that particular conduct occurred. So if there's a factual dispute over whether the facts alleged are true or not, that's one thing. That may not be appealable, and I would suggest that this court does have the ability to say, look, we're only going to review legal questions if it's not dealing with this factual dispute over whether or not the alleged conduct occurred. But at the motion to dismiss stage, you never have a factual dispute. So I'm a little confused what you're saying about that. So sufficiency questions would always go up. It would be these motions for summary judgment-like analyses where there is a question about whether or not the alleged fact occurred. So in Johnson it was whether the officers were present at the beating of the prisoner. I understand that, but this distinction about when summary judgment, qualified immunity, can be appealed or not, I don't see how it really helps you at the motion to dismiss appeal question, whether there's appellate jurisdiction over a motion to dismiss stage. So I don't know of a case that says that the appellate court does not have appellate jurisdiction over an issue of immunity from suit when it's on a motion to dismiss. These issues, I think, that are in the other circuits are dealing with motions that are more like motions for summary judgment. They're dealing with what they're calling fact-based questions. So that doesn't happen on a motion to dismiss. Normally motions to dismiss, I think it depends whether this really is immunity in the same way or not. So I think the questions we've been getting are maybe this isn't the same as qualifying immunity in terms of it being like immunity. Well, I think that is a separate issue, but I think on separability, there's a question of what does it actually mean to be separable, conceptually distinct from the merits, and I think this Ernst decision and some of the other circuits are calling anything that involves the facts inseparable from the merits, and I think that that's incorrect under Behrens and Plumhoff. So can I just ask, assume we disagree with you about this immediate appealability question, could we still agree with you that it applies in federal court until it's at the end of the case, and what would the anti-SLAPP arguments look like at the end of the case? Would they be really any different? Could you just get your fees at the end of the case if you needed to and the analysis would be the same, or is there some way in which, other than the fact of the hassle in the meantime, that this whole thing would not work? I think the court could do that. I think that that is something that the court could do logically. It could exclude appeals and simply allow the case to proceed, and then there would be a right to recover at the end if the defendant is successful. However, I do think that that really would defeat the purpose of the statute. The whole point of the statute is to prevent, as the California Supreme Court has said, a right not to be dragged through the courts because you exercise your constitutional right. So I think that that does really cut against the whole purpose of the statute. Getting fees would be pretty significant, though. It would go a long way into making you whole for that, right? You'd get the fees for the whole suit at that point? That's correct, Your Honor, and I just would add, I think— I don't see how that would be true. The statute at most provides you fees in connection with the motion. I don't think so, Your Honor. I think it provides fees to the prevailing defendant. I'm looking at the statute right here. This is 42516C1, and it says, a prevailing defendant on a special motion to strike shall be entitled to recover that defendant's attorney's fees and costs. So if the motion maybe is renewed—this is a hypothetical situation. Maybe you renew the motion after trial. You ask for fees. Obviously, the fees have been—you've incurred more fees on the whole case at that point. I do want to suggest maybe one intermediate step the court could take as opposed to just getting rid of all anti-SLAPP appeals. The court could limit anti-SLAPP appeal jurisdiction to purely legal issues, purely legal issues that don't require a voluminous record and weighing into the facts. I know that is a burden on the court. So the court could simply analyze legal issues, perhaps— But that would mean all motion to dismiss denials would be appealable, right? That would, Your Honor. Yes, that's correct. That's correct. And I think that that is a typical scenario, and it often does involve a question that the federal appellate courts in particular have unique expertise, which is application of the First Amendment. So I think if that is the question before the court that is within the unique expertise that falls within the Plumhoff analysis of appellate jurisdiction, I think the court should at least consider that question. In qualified immunity, though, there's the question of whether it was clearly established, which is not really the same question as whether there just is a violation in this case. Is there some separate thing that you think we can call the separate issue here that's equivalent to that? Well, I don't think the court just considers whether it's clearly established. I think once the court determines what the clearly established law is, it looks at whether it's been violated. If we look at the court's opinions on qualified immunity, I mean, we're getting into totality of the circumstances analysis. We're getting into questions of not resolving disputed questions of fact, but at least taking the evidence favorable to the plaintiff for the non-movement. So that is an analysis that the court routinely undertakes, and it's not separable from the merits, or is separable from the merits, rather. I want to quote to you from something that our former colleague, Judge Watford, said in the Makoff case, which I think really succinctly points out our struggle with the consideration of the merits. He said, A court cannot gauge the probability of success of a claim as required to view the denial of an anti-SLAPP motion without assessing the merits of the claim itself. Such a predictive analysis may not amount to deciding the claim on the merits, but there's no credible argument that it, in quote, is completely separate from the merits. And that's exactly what I'm struggling with. I don't see how we can, or the district judge in this case, can decide an anti-SLAPP motion without at least saying some predictive sense of how the facts work. And it doesn't seem to fit within our controlling statute, which I think creates a problem for our immediate appealability. So, Your Honor, I do think completely separate from the merits when you look at that at face value. And that's the standard, right? That's the standard, and I think I would agree looking at that at face value, it would seem that it does touch on the merits, but that's frankly not how the U.S. Supreme Court has determined what's separable from the merits. If the court reads the Barron's case and the Plumhoff decision, I think it becomes quite clear that separable from the merits does not mean no consideration of the merits whatsoever. In the Plumhoff decision in particular, the court is analyzing the totality of the circumstances to determine whether or not the Fourth Amendment was violated based on the conduct that was proven in that case. And that was separable from the merits. Can you explain exactly what it is, why your position would not mean that all 12B6s, even outside the SLAPP context, are immediately appealable? What is it that distinguishes this from that case that means that the Cohen standards are all met? Well, first of all, Your Honor, this is a state statute. This is a state-conferred right of immunity from suit. Even though the California Supreme Court has said it's not an immunity from suit? It has said this is not immunity. It didn't say immunity from suit. It said this is not immunity when it was dealing with a separate issue. It was not talking about the difference between immunity from suit and immunity from liability. That question has not been before the California Supreme Court. I would say that the Varian decision already makes clear that it is. If it's unclear, the court could do what it did in Adame and certify that question to the California Supreme Court. But I think it's quite clear from the statutory text that this is immunity from suit. The whole purpose of the statute is to protect litigants from – protect their speech rights from litigation itself. So that really gets to the essence of a right not to be tried and immunity from suit. Couldn't you say the same thing, though, about a 12B6 that is designed to prevent litigants from having to deal with a meritless or not plausible lawsuit? I don't think so, Your Honor, because I don't think that the interest of suppressing speech and the concern for litigation itself suppressing speech is really the issue in a 12B6 motion. There's no threshold question of whether the action touches on speech or is arising from speech when you're dealing with a 12B6 motion. That's simply a pleading standard, a requirement to bring a claim in federal court. So what – from your perspective, is there a parade of horribles if we just get rid of everything? Say it's not a substantive right, it's all procedural, it's not – you know, so it would not be in federal court. What's the parade of horribles? Well, I think the forum shopping issue is clear. I think that litigants who want to file these type of lawsuits will file them in federal court. And I do think that it does create a significant problem in terms of just the constitutional balance that Congress has struck, that the framers have struck, that the U.S. Supreme Court has repeatedly affirmed in Erie and all of its progeny that the federal courts are no longer going to apply more protective rights that the states decide to enact on constitutional rights. If the states want to protect a constitutional right more than the federal government wants to protect it, that type of decision would say they can't do that. So can I ask you, if that's right, you know, we have a lot of case law that has said there's a conflict here between the anti-SLAPP statute and the federal rules, and we're going to try to smooth that over. Planned Parenthood, our decision in that case, being probably the high watermark for that, to say we're not actually going to even apply the state standards here, we're going to apply Rule 12 and Rule 56. So if your position is correct, would you be asking us to overrule Planned Parenthood and to overrule, frankly, a number of other cases that say we're going to apply federal procedural rule and not the state procedural rule? Not necessarily, Your Honor. I think that Planned Parenthood is consistent with the Gasparini decision in that it does go out of its way to preserve the substantive thrust of the law. It reconciles the law with the federal rules. We haven't talked about conflict, but I don't think there's anything close to the conflict in Shady Grove where you have a categorical permission of the federal rules that's actually being contradicted. There's nothing like that here. All the Court's doing in Planned Parenthood is reconciling the rules together, which Justice Scalia says is the first step in Shady Grove, seeing if the rule can be reconciled in Gasparini, preserving the substantive thrust. I think that that's consistent. If we've taken away the probability standard, which is a big standard in the anti-SLAPP, the whole ballgame is that you now have to meet that standard early on. If we've taken that away, what's really left of it here in federal court? I think that there are several things left. I would say, first of all, Your Honor, I don't think that the Court has to take away that standard. I think that's a substantive standard. I think a standard for a right is a substantive standard. It's not a process. It's not a procedure. But even if the Court maintains the Planned Parenthood reconciliation, I think that there very much still is a right not to be tried that's at stake. There is the attorney's fees provision, and there is the motion that really is the procedural mechanism that Cohen says it's okay to have a procedural mechanism to preserve the right, to ensure the right. That can't be dismissed as a mere procedural device simply because it's used to get access to this right that the state has provided. I see that my time is expiring. Thank you. I'll give you a couple minutes for rebuttal. Thank you. May it please the Court. Owen Praskovitz on behalf of Appellees Andrew Malone and American Pizza Manufacturing. Your Honors, this case was scheduled to go to trial in July of last year. Fact discovery ended in this case in November 2022. This case was initiated way back in 2021. The reason appellees are still awaiting their day in court is because appellants, who knew at the outset of this case that they intended to file an anti-SLAPP motion, waited until the last possible moment to do so, and they took advantage of this Court's precedent that allowed immediate appeals at any point in the case to put the case dead in its tracks. Today, this Court has the opportunity to end such gamesmanship and reverse its precedent that has allowed this type of behavior. Is there a problem with the pleading, though, in this case? Because it was not until the third amended complaint, apparently, that the plaintiffs filed their response. Your Honor, all of the allegations and legal issues that are now at issue on the anti-SLAPP motion, all of it was at issue in the first counterclaim filed in January 2022. Yes, there was an additional cause of action added in the third amended counterclaim, but it was defamation and trade libel, and it was the same allegations. Appellants knew from the outset that they intended to file an anti-SLAPP motion. In their Rule 26 discovery report, they said as much, and yet they waited until that third amended counterclaim two years later to file their motion. Now, of course, this Court's precedent in Sarver has allowed motions, anti-SLAPP motions to be filed at any point in the case, and in that decision, the Court said that the reason they're allowed to do that is because the 60-day rule under California's anti-SLAPP statute doesn't apply in Federal court because of the conflict with the Federal rules of civil procedure. I think the loss of that 60-day threshold is one of the primary reasons the California's anti-SLAPP statute is not operating as it should, and that's why immediate appeals should not be allowed. Counsel, I want to move for a minute to the second issue, substance versus procedure. Could the California legislature pass a statute like this? If you bring a SLAPP suit without a probability of prevailing, there is immediately accrued a special abuse of process cause of action. You're asking if the legislature would? If the legislature passed a statute like that. And how it would play out? It would say if you bring what they've defined as a SLAPP suit without a probability of prevailing, there is immediately accrued to the defendant a special abuse of process action. Well, that would address, I believe, one of the questions earlier. Oh, your answer is yes. Yes. So why isn't this statute, for the purposes of attorney's fees, the substantive equivalent of that, where the California legislature is basically saying if you bring this without a probability of prevailing, we're essentially creating a cause of action that will give a right to attorney's fees? Why isn't that substantive under ERIE? Your Honor, actually, we agree that it is a substantive right. Appellees actually support the ongoing application of California's anti-SLAPP statute in the Federal Court. We agree it's a substantive right. And all the reasons written by the amicus briefs in this case, there's many policy reasons why the anti-SLAPP statute helps journalists, media organizations, hospitals, others who would be discouraged or punished merely for exercising their First Amendment rights. The problem is the statute is not being used as intended. And so our position is that this Court should maintain the anti-SLAPP statute, but just get rid of the interlocutory immediate interlocutory appeal procedure. So you agree that this is, and you agree with the amici, that this is essentially, at least as to attorney's fees, a substantive right created by the legislature that we should enforce? Yes, Your Honor. And it's one that can be heard at the end of a case even if there was no immediate appealability, is that correct? Yes, Your Honor. And I somewhat agree with my friend on the other side who suggested there could be an intermediate process that this Court might consider. We agree there should be no immediate appeals, but if this Court were to allow Rule 12 motions, if they were filed within 60 days of the initiation of a case, it's much more consistent with what the statute is intended to provide. Why would that be necessary since, as I mentioned before, the district court can certify a question that's important enough to us, and if we want to, we can accept it. Why doesn't that take care of that problem? Well, I would actually agree with that. I think part of this process would be this Court could provide guidance to district courts to say when an anti-SLAPP motion is brought within 60 days, and it would have to be a Rule 12 motion, not a Rule 56 motion, because a Rule 56 motion is much more involved with the merits and you run into the second element of the collateral order doctrine. So if a litigant expressly says they're pursuing a Rule 12 motion and they bring it within 60 days and it's denied, they can ask the district court to certify whether that issue should go up on immediate appeal. And I think there's another element to this that makes it a little bit more removed from the merits, and I haven't heard it discussed here today, and that is on an anti-SLAPP motion, the first prong asks whether or not the party bringing the motion, whether their acts and conduct at issue is brought in the public interest. And that's really nothing to do with the merits. The merits come in under the second prong of the anti-SLAPP statute. And so in our case here, the district court found that appellants had not met their burden showing that their acts and conduct was brought in the public interest. So this would be presumably an issue that has nothing to do with the merits of the case. The problem with our case, however, is that it was brought at the end of the case. And if the anti-SLAPP statute is meant to protect the importance of ending cases early at the outset of a case before the defendant is required to undergo the expense and intrusion of discovery, discovery was long closed by the time appellants brought their anti-SLAPP motion. We were on the eve of trial. We were ready to go. Instead, they got a free timeout in the case. This is what the California Supreme Court warned of in Newport Harbor Ventures. That was a case where a party had tried to bring an anti-SLAPP motion in response to an amended pleadings. And it described all the problems that this Court is facing. An anti-SLAPP motion is not a vehicle for a defendant to obtain a dismissal of claims in the middle of litigation. It is a procedural device to prevent costly, unmeritorious litigation at the initiation of a lawsuit. So if we only allowed it to be mentioned. But, sorry, can I just clarify? I thought you were saying earlier that it would be okay to bring it at the end, all the way at the end. Do you agree with that? Would it be okay? Yes. And only because of the conflict with Federal Rules of Civil Procedure. But I don't think there should be an immediate right to appeal those motions if it's brought at the end of the case. And I think by limiting it, limiting immediate appeals to those motions that are brought early, it's encouraging parties who may suffer the costs of a case, the discovery, all the associated costs. It would encourage them to bring their motion early. But would you think it was okay to say there's no interlocutory appellate jurisdiction and you can just appeal this at the end of a final judgment the way you would appeal other issues of law? Yes, Your Honor. Ultimately, I think that would be a fair result because if a litigant has a meritorious anti-slap motion and they bring it, presumably the case would be dismissed. And if it's not, they can address it much like a party who prevails on an anti-slap motion. The losing party can't appeal that until the end of a judgment. And if that was how it played out, would the fees be for all of the litigation or just the motion? That's not a question I've really assessed. But my understanding is that when you recover attorney's fees on an anti-slap motion, you only get fees for the motion itself, particularly here where appellants brought the lawsuit. They wouldn't get their fees for their complaint. It would have to be divided and associated only with the anti-slap motion. But is that because it's currently usually done at the start and that's the only real cost they've incurred? Or is that because of how the statute reads? I believe that might be more in practice than what the statute reads. And obviously there's some tension there because the litigant who prevails on the plaintiff, who prevails on the anti-slap motion, would now be subject to potentially a massive amount of attorney's fees. It seems like it really wouldn't be furthering California's purpose unless you got fees for the whole suit at that point if it had to wait until the end. I do agree with that. I mean, obviously it would have to be associated only with the cost associated with the complainant issue, right, if there's a separate complaint. You'd have to divide that. But, yes, I think to further California's purpose, it would have to be for the whole fees and costs. And so there would be some risk, of course, for the prevailing plaintiff that a court could overturn everything. But, again, if the motion is brought early enough in the case, I think to your question, perhaps it would have to be incurred only after the motion at that point. Because you'd have to renew the motion or maybe not. I guess I'm a little unsure whether you'd have to bring it at the beginning and then also renew it at the end or just whether you could just bring it at the end. That was another question I had. It's an interesting question. But I think you wouldn't want to reward a party who waits until the end of the case to bring their motion. And then if they lose and then they overturn that on appeal, now they get fees and costs for the whole case when they waited two years into a case to even bring their motion. I think there would have to be some limiter on. Isn't this just the latest example of what happens when you try to mash together these two sets of procedural rules? Because in the California system, you can bring the motion out of the gate. You can get an immediate appeal under the rules. And you don't have to have this question of whether the attorney's fees is not just a slap on the wrist but possibly a massive sledgehammer that could result in somebody bearing the cost of a multiyear litigation. That question really would not arise in California state court because you would have the immediate appeal that could resolve all of these questions. And here we have the federal rules and our own Supreme Court case law on the collateral order doctrine which make it rather difficult to justify these interlocutory appeals. So if you're talking about the availability of attorney's fees, it's not going to work the same way in federal court that it would in state court just given the nature of the procedures. That's absolutely correct. And there's all kinds of associated problems. In your Flo and Eddie concurrence, you highlighted there were two appeals in that case. I think two anti-slap appeals over a span of seven years. I mean, the attorney's fees and costs associated with that would be massive. I agree there's some tension there. And whether or not this court were to write an opinion that still allowed anti-slap motions to continue and be filed at any point in the case, obviously that's something that this court would have to wrestle with. But if I can be honest, Your Honors, appellees do not have much of a dog in this fight as to this court's longstanding precedent on California's anti-slap motion. My client's interest is only to get this case back in front of the district court to affirm the district court's ruling dismissing the anti-slap motion and to get this case in front of a jury. We're supportive of the anti-slap statute on policy reasons. And we believe that appellant's conduct here was an abuse of the anti-slap statute. And this court has the chance and opportunity to redress that. But at the end of the day, however this court rules, it really the reason I bring it back to my clients is because my clients are actually the victim of this anti-slap statute. We are undergoing the many fees and costs. One point I'd like to make is in consideration of this potential right to bring in an anti-slap motion at the beginning of the case, if you were to seek certification from the district court, a losing defendant like appellant here could ask, oh, I'm sorry, where a defendant wants to appeal and they seek to get their appeal certified, they would have to post a bond for litigants like appellees who prevailed on the motion. And because the anti-slap statute provides attorneys' fees and costs for a winning plaintiff where that motion was frivolous or brought for unnecessary delay. So I think that's another hook that could limit appeals. And I think this court should consider providing that narrow circumstance to protect litigants like my client. If I can, I would like this court to still address the merits of the underlying anti-slap motion. For several reasons, I don't want to have appellants have a third bite at the apple. Sorry, I'm a little confused about how we would do that. Because I think your position is we don't have jurisdiction. Jurisdiction on appeal. Appellant jurisdiction right now. That's a good question, Your Honor. I would ask that the change in jurisdiction would be going forward. It would be on a going forward basis. I don't think jurisdiction can work that way, counsel. If nothing else, I would hope that this court perhaps could write an advisory opinion on the merits of the motion. We wouldn't want to be back here a third time on appeal. When people break out in laughter when you ask for an advisory opinion, does that give you a sense? Absolutely, Your Honor. I understand. Counsel, I want to be sure I understand what you said before to answer to my colleagues. I understand you were ready for trial. Yes. Unlike some people, if we find there's no jurisdiction, you're in trial. Yes. Whatever is going to be going on is going to be going on very quickly. It's not going to be drawn out a whole bunch of time in your case. Is that right? That would be right, Your Honor. Okay. However, if that's the case and the anti-slap statute is still enforceable in the Ninth Circuit, appellants could, in theory, renew the same arguments post-judgment in this case. That would be like the 12B6 example that was raised earlier, right? In terms of, yes. Whatever is pending before the trial court and there's a judgment, you can appeal whatever you don't like. Yes. Everything gets wrapped up in the one final judgment. Right. And under C-1, you could get your attorney's fees. Yes. If it was frivolous or solely intended to cause unnecessary delay, which is apparently what you're arguing. Yes, Your Honor. And we would ask the district court to make a ruling so that we could recover our fees and costs. Or, alternatively, this court could, I believe, find under Federal Rules of Appellate Procedure that the appeal was frivolous, and we would ask the court to consider including that in its order. And we know it's frivolous in part because prior to appellants filing their late anti-SLAPP motion, in meeting and conferring pursuant to the local rules, they made clear that whatever the outcome of the motion was, that they intended to appeal it. I think that goes to some of the bad faith that litigants like appellants have used the anti-SLAPP statute to further their interest of delaying the case. I don't understand what you think they did that current law didn't allow them to do. Because didn't you amend the complaint, and they then brought an anti-SLAPP motion? I mean, there's an argument. There's some claims there that maybe they should have brought, could have brought it before, but you did amend the complaint. We did, Your Honor. And to the extent, I think the district court's order found a good compromise on that. It addressed the defamation claims, and it found that they had forfeited their anti-SLAPP arguments on the trade libel claims. But I think this court could clarify, much like the Newport Harbor California Supreme Court decision says, when you could have brought your motion earlier, you should be prevented from bringing your anti-SLAPP motion later. So under current precedent, yes, there was an opportunity for them to bring their anti-SLAPP motion later in the case. But we believe that this court should write an opinion that would encourage parties to bring their motion earlier by not waiting until there was an amended counterclaim here. And consistent with the district court's finding that they forfeited their anti-SLAPP arguments. And so, Your Honors, if I may just briefly get into the merits of the anti-SLAPP motion. I understand there might not be much of an appetite for ruling on the merits here, but I think it's important to know why we're here and why all of the issues and legal questions that are at issue on the anti-SLAPP motion could have been brought at the outset of the case. And that goes back to the fact that when this case started, this case was over a parking lot dispute. When my client, APM, changed its parking spaces in front of its business to 15-minute zones, appellant AJ Thakor took issue with that and he began a series of actions to attack my client. And including flying airplanes over La Jolla, attacking my business, going on Instagram, accusing my client of kicking handicapped dogs and making racist statements. And it culminated in appellants filing their lawsuit seeking $10 million in damages from my client. So when appellees brought their counterclaim in January 2022, all of these issues were put on the table at the outset of the case. And so at that time, appellants could have brought their anti-SLAPP motion, which is why they said in the Rule 26 report that they intended to do so. So when a new cause of action was added at the end of the case for defamation and the Third Amendment counterclaim, the district court had found that all of the allegations, all of the legal theories were pretty much similar with the original trade libel claim. And so in that circumstance, I believe it would be inappropriate to allow appellants to bring their anti-SLAPP motion at such a late stage in the case. I see I still have a lot of time remaining, but if this court doesn't have any remaining questions. Thank you. Thank you for your time. Briefly, just a couple of points, Your Honor. First, I just want to clarify, there was some talk about the merits of the case and the facts of this case. The Supreme Court's been clear in the Barron's decision in particular that appeal rights cannot depend on the facts of a particular case. That's clearly established law. So the facts of this case are frankly irrelevant to the jurisdiction question on collateral order doctrine. And I just want to briefly discuss the issue of abuse. I know that that is a concern. The Barron's decision in particular does talk about the issue of abuse of appellate jurisdiction, and it does say that if and when abuse does occur, it is well within the supervisory powers of the courts of appeals to establish summary procedures and calendars to weed out frivolous claims. So that is something that is done separate and apart from the jurisdiction question. The conflict analysis, if the court does get into the Erie question, which I would note, there is no party before the court disputing the Erie question. All the parties agree that the California anti-SLAPP law applies in federal court. So I don't think the court has to actually answer that question, but if it does, we obviously think the statute should apply. And if it does, I think the conflict analysis of Shady Grove in particular is, as Judge Cowling has pointed out, a textual analysis, a textual analysis of the rule as compared with the anti-SLAPP law. And you don't see any subtraction from the federal rules like you had in Shady Grove. You do have additions, but if an addition to the federal rules is a conflict, then I don't see how the state can pass any law that wouldn't conflict with the federal rules. Counsel, let me ask you this. Hypothetically, if this court were to find that for the reasons that have been discussed, we don't have jurisdiction, do we just send this back to the district court and let it proceed as if it were a 12B6 issue in effect? That's correct, Your Honor. It would dismiss the appeal if the court doesn't have jurisdiction. If I may ask a question. Your friend on the other side suggested that we keep the anti-SLAPP applied here in federal court, but there's no immediate appeal. If that were the situation, would the forum shopping and other parade of horribles you mentioned still occur? I think so. I think it would, Your Honor, just because it's a denial of that substantive right. I think part and parcel to the substantive right not to be tried is, as the court has recognized when it's found a right not to be tried, the ability to have a direct appeal, to have the right to appeal if the right is denied. So I do think it would be outcome determinative in that sense. If the whole point of the lawsuit is to silence someone, it would probably have that intended effect if they're going to have to wait until after trial to file an appeal. So I do think it really defeats the purpose of the statute. I would just say on the question of appealability, if it does come down to immunity from suit, if that's a question of what the California Supreme Court thinks, the court should certify that question to the California Supreme Court. The court's done that in the Adame decision on this very issue. So that, I think, if it is going to be kind of the touchstone of the collateral order doctrine, then that question should be resolved. But again, we do think it has been resolved by current California Supreme Court law. And finally, I would just encourage the court to review the Barron's decision, the Plumhoff decision in particular, on the issue of separability. I think it's quite clear that those precedents are in conflict with the Second Circuit and the Tenth Circuit who have departed from this court on the issue of separability in particular. If the court doesn't have any further questions, I would ask the court to affirm its prior precedent and remand this case back to the original pre-judge panel. Thank you, Your Honors. Thank you, Mr. Coburn. Mr. Pruskowitz, thank you very much. Appreciate the oral argument presentations here today. The case of Gopher Media LLC v. Andrew Maloney is now submitted. We are adjourned. Thank you.
judges: MURGUIA, CALLAHAN, SMITH, FRIEDLAND, BENNETT, COLLINS, LEE, BRESS, BUMATAY, VANDYKE, THOMAS